IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION


BRENTRICK DUKE,

      Plaintiff,           NO. 3:17-cv-01191

vs.                              CHIEF JUDGE WAVERLY D. CRENSHAW, JR.
                                  Magistrate Judge Kemp
NANCY A. BERRYHILL,
COMMISSIONER OF SOCIAL
SECURITY,

      Defendant.


To: The Honorable Waverly D. Crenshaw, Chief Judge


### REPORT AND RECOMMENDATION

      This is an action instituted under the provisions of 42 U.S.C. §§ 405(g) to review a final decision of the Commissioner of Social Security denying Plaintiff's application for a period of disability and disability insurance benefits. On December 20, 2017, Plaintiff filed a letter request asking the Court to review the record (Doc. 13). The Commissioner responded on February 15, 2018. (Doc. 16). For the following reasons, it will be recommended that the Plaintiff's letter request, construed as a motion for judgment in his favor, be **DENIED**, that the decision of the Commissioner be **AFFIRMED**, and that this case be **DISMISSED**.

### I. Background

      Plaintiff filed his application for benefits on February 24, 2014, asserting that he became disabled on January 24, 2104. On June 3, 2014, that application was denied, and Plaintiff's request for reconsideration was denied on January 28, 2015. He then asked for a hearing before an Administrative Law Judge (ALJ). A hearing was held on April 22, 2016. Plaintiff and a vocational expert, Chelsea Brown, testified at the hearing.

      In a decision dated June 29, 2016, the ALJ determined that Plaintiff did not meet the requirements for disability. Plaintiff sought review of that decision from the Appeals Council, but his appeal was denied on June 26, 2017. The case is now before this Court to determine which party is entitled to judgment on the administrative record (Doc. 11).

## II. The Findings and Conclusions of the ALJ

In her decision, the ALJ made the following findings of fact and conclusions of law (with some legal references omitted):

1. The claimant meets the insured status requirements of the Social Security Act through March 31, 2019.

2. The claimant has not engaged in substantial gainful activity since January 24, 2014, the alleged onset date.

3. The claimant has the following severe impairments: Gout; Bursitis-right hip; and Obesity.

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except the claimant can lift and/or carry 20 pounds occasionally and 10 pounds frequently; stand and/or walk 6 hours in an 8-hour workday; sit 6 hours in an 8-hour workday; and occasionally push and/or pull with right lower extremity, including the use of foot controls.

6. The claimant is capable of performing past relevant work as a Customer Service Representative. This work does not require the performance of work-related activity precluded by the claimant's residual functional capacity.

7. The claimant has not been under a disability, as defined in the Social Security Act, from January 24, 2014, through the date of this decision.

## III. Plaintiff's Claims

Plaintiff has not filed a specific statement of errors, but he has asked the Court to review the record. He asserts that his gout affects his ability to work due either to medical appointments or flare-ups which can last for weeks. He also argues that he has depression and that he has not done any work for years.

## IV. Standard of Review

This Court has set forth the applicable standard of review in this fashion:

This Court reviews the final decision of the SSA to determine whether substantial evidence supports that agency's findings and whether it applied the correct legal standards. *Miller v. Comm'r of Soc. Sec.*, 811 F.3d 825, 833 (6th Cir. 2016). Substantial evidence means " 'more than a mere scintilla' but less than a preponderance; substantial evidence is such 'relevant evidence as a reasonable mind might accept as adequate to support a conclusion.' " *Id*. (quoting *Buxton v. Halter*, 246 F.3d 762, 772 (6th Cir. 2001)). In determining whether substantial evidence supports the agency's findings, a court must examine the record as a whole, "tak[ing] into account whatever in the record fairly detracts from its weight." *Brooks v. Comm'r of Soc. Sec.*, 531 Fed.Appx. 636, 641 (6th Cir. 2013) (quoting *Garner v. Heckler*, 745 F.2d 383, 388 (6th Cir. 1984)). The agency's decision must stand if substantial evidence supports it, even if the record contains evidence supporting the opposite conclusion. *See Hernandez v. Comm'r of Soc. Sec.,* 644 Fed.Appx. 468, 473 (6th Cir. 2016) (citing *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)).

Accordingly, this Court may not "try the case *de novo*, resolve conflicts in evidence, or decide questions of credibility." *Ulman v. Comm'r of Soc. Sec.*, 693 F.3d 709, 713 (6th Cir. 2012) (quoting *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007)). Where, however, an ALJ fails to follow agency rules and regulations, the decision lacks the support of substantial evidence, "even where the conclusion of the ALJ may be justified based upon the record." *Miller*, 811 F.3d at 833 (quoting *Gentry v. Comm'r of Soc. Sec.*, 741 F.3d 708, 722 (6th Cir. 2014)).

*Allen v. Berryhill*, 273 F. Supp. 3d 763, 770 (M.D. Tenn. 2017)

### V. Summary and ALJ's Evaluation of Relevant Evidence

#### A. Hearing Testimony

Plaintiff first testified that he was 30 years old and lived by himself. Sometimes he had help from his friends maintaining his house, particularly when his gout flared up, which could happen twice a month. The flare-ups lasted two or three days and affected his right hip and right foot. His back also hurt and limited him to standing for ten or fifteen minutes at a time. However, he was able to make meals for himself.

When asked about work, Plaintiff said he had worked up to two weeks before the hearing, performing a customer service job which he had held since 2015. He worked between three and five hours a day, four days a week. His employer ended his last assignment because he was missing work often and also taking multiple bathroom breaks due to side effects from his medication. More recently, he was getting paid a small amount to clean his church on Sundays. Years before, he had been a ticket agent for Greyhound, and had received an accommodation

which allowed him to sit down while working to prevent swelling in his foot. Plaintiff had also worked as a helper for mental health patients. He had also been a janitor at Greyhound.

Plaintiff testified that he drove four or five times per week but traffic caused him to be anxious. He did grocery shopping but rode rather than walked. He could sit 30 or 40 minutes at a time before having to lie down. On a daily basis, he lay in bed with pillows propped up in front of his body. His current weight was 301 pounds. As far as education, Plaintiff completed the twelfth grade but was in special education classes in high school. Math, in particular, gave him trouble, but he could make change and pay his own bills. Finally, Plaintiff testified that he had a problem concentrating due to his depression. (Tr. 39-53).

The other testifying witness was Chelsea Brown, a vocational expert. She noted that Plaintiff's past relevant work included the jobs of reservation clerk, janitor, and customer service representative. Those jobs ranged from sedentary to medium in exertional level, and from SVP levels two to five.

Ms. Brown was then asked questions about a hypothetical person who could work at the light exertional level but who could push and pull with the right lower extremity only occasionally, with that limitation also extending to the operation of foot controls. In response, Ms. Brown said that such a person could be employed as a customer service representative. However, someone who could do only low level detailed tasks and who could tolerate only infrequent workplace changes could not do that job. There were other light jobs such a person could perform, however, including sales attendant, cashier, and storage facility records clerk. None of those jobs would be available to someone off task for ten percent of the day.

Lastly, Ms. Brown was asked to testify about someone who was limited to sedentary work and who further was unable to combine sitting, standing, and walking for a total of eight hours in a workday. The person also had to lie down two or three times a day to elevate his or her legs. She said that such a person could not be employed. (Tr. 53-60).

### B. Medical Evidence

In his statement of errors, Plaintiff focuses primarily on the functional limitations of his gout and his depression and anxiety. He mentions HIV but concedes that it is under control with medication. The Court's summary of the medical evidence will similarly concentrate on the records relating to gout and to psychological disorders.

Plaintiff underwent an intake assessment for psychological issues on April 1, 2014. He reported little in the way of past treatment and was not taking any medications. He said that he had been depressed and unable to sleep. He also stated that he had been fired from his job with Greyhound and was looking for other work. The diagnosis was major depressive disorder, recurrent, severe, with psychotic features. A six-month course of treatment was recommended. (Tr. 331-37). Further records show that he was given medication and was then seen periodically

for medication management. He missed multiple appointments and said that the medication had stabilized his condition. He also said that his inability to work was due to physical problems. (Tr. 337-42). However, other notes, such as one from July 22, 2015, indicate that Plaintiff was still reporting significant anxiety and depression. (Tr. 346). Similar symptoms were reported on March 9, 2015 (Tr. 354), January 12, 2015 (Tr. 365), and December 15, 2014 (Tr. 377). He also said that his missed appointments were due to a lack of transportation. A recurring theme in all of the treatment notes is that he believed his anxiety was due to his HIV diagnosis.

There is only one treating source opinion in the record. It consists of a statement completed by a nurse practitioner, who concluded that Plaintiff could sit for two to three hours in a workday, stand for one to two hours, and walk for less than thirty minutes. He also needed to elevate his legs and take unscheduled work breaks. These limitations were attributed to gout and obesity and supported by evidence of elevated uric acid levels. (Tr. 435-36).

There are numerous records of regular medical treatment for both HIV maintenance and for gout. A number of them show that Plaintiff denied any anxiety or depression and that his depression was well-controlled. They also show some periodic medical noncompliance with gout medication as well as treatment for sleep apnea. (Tr. 437-548). A note from September, 2015 describes his gout as uncontrolled. (Tr. 546).

Plaintiff also sought treatment for gout pain from The Pain Management Group. At his initial visit he was reporting right toe pain, which was limiting his ability to walk. The toe was slightly swollen and tender to palpation. That treatment note also described Plaintiff's gout as uncontrolled. Finally, it noted that he did not appear to be anxious, depressed, or irritable. (Tr. 659-63). Follow-up notes show that Plaintiff reported pain in his back, hip, and right leg and that he was prescribed medications for pain. He also exhibited tenderness and muscle spasm in the lower back. A CT scan of the right hip was negative, but studies showed radiculopathy and degenerative disc disease, and steroid injections were recommended because his pain was not responding to more conservative therapy. (Tr. 664-92).

### C. The ALJ's Decision

The ALJ began with a finding that Plaintiff had three severe impairments - gout, bursitis of the right hip, and obesity. She rejected the notion that his HIV and diabetes were severe, concluding that the former was controlled and the latter was only recently diagnosed and did not meet the 12-month durational requirement for a severe impairment. She then considered depression and anxiety, but, resolving conflicts in the records, pointed out that although he sought treatment in 2015 for those impairments, the treatment consisted of conservative medication management; that he consistently denied mental health symptoms at various physical examinations; and that he was able to live alone and care for his needs. (Tr. 23). She also gave significant weight to the opinions of the two state agency psychologists who both concluded that Plaintiff did not have a severe mental impairment.

When the ALJ evaluated Plaintiff's residual functional impairment, she first summarized extensively the medical records relating to his gout and joint pain. Next, she considered his testimony about the flare-ups of his gout and their intensity and duration. She discounted that testimony to some extent, accommodating his symptoms by finding that he had limitations in his ability to push and pull with his leg and that he could do no more than light work. She also pointed out that he had returned to work for eight months during the period he claimed to be disabled, doing so due to financial pressures. She then examined the opinion evidence, first giving little weight to the opinions of the state agency physicians, both of whom said that Plaintiff had no severe physical impairments, because the evidence showed otherwise. Lastly, she assigned little weight as well to the opinion of Plaintiff's nurse practitioner, finding it inconsistent with Plaintiff's own report of his activities of daily living and his ability to work after that opinion was rendered. (Tr. 28). She ultimately concluded that he could work as a customer service representative, a job which, according to the vocational expert, could be done at the sedentary level and was consistent with the residual functional capacity determined by the ALJ.

## VI. Discussion

There are two primary issues in this case: did the ALJ rely on substantial evidence when concluding that Plaintiff's psychological impairments were not severe, and was there substantial evidence to support her finding that Plaintiff's gout was not so severe as to prevent him from performing his past work? As noted above, the Court's review is limited to determining whether a reasonable person could have reached those conclusions based on the evidence of record.

As the Court's review of the evidence shows, the records concerning Plaintiff's mental impairments are somewhat in conflict. Although he did seek treatment from a mental health provider in 2015 and reported serious symptoms to that provider, he consistently denied both anxiety and depression when seeking treatment for his physical symptoms. The ALJ correctly pointed out that the treatment he obtained consisted entirely of medication, and that at times he reported even to his mental health provider that the medications had stabilized his symptoms. An ALJ has substantial discretion to resolve conflicts in the medical evidence, and when she does so on the basis of evidence which a reasonable person could accept as true, the Court cannot disturb the ALJ's findings. *See Henderson v. Apfel*, 142 F.Supp.2d 943, 946 (W.D. Tenn. 2001)("Generally, the ALJ has the discretion to decide which conflicting medical evidence to accept. *Barker v. Shalala,* 40 F.3d 789, 793 (6th Cir.1994) (indicating that the ALJ has the discretion to decide which one of two conflicting medical opinions by two physicians to accept)"). The Court finds no error in the ALJ's resolution of this conflicting evidence.

The ALJ also bolstered her findings by noting that, despite his claim of disabling psychological symptoms, Plaintiff was able successfully to return to work. An ALJ is permitted to consider a Plaintiff's daily activities, including work, in deciding how severe the Plaintiff's symptoms actually are. *See generally Van Winkle v. Comm'r of Social Security*, 29 Fed.Appx. 353, 357 (6th Cir. February 6, 2002)(approving ALJ's use of daily activities as a basis for

discounting allegations of disability).  Finally, the ALJ relied on the opinions of the state agency psychologists, who, although they did not have access to all the relevant records, nonetheless concluded that Plaintiff had only mild restrictions in his ability to function socially and in the workplace.  All of this evidence supported the ALJ's finding, and the Court concludes that the evidence is substantial enough to insulate the ALJ's decision on this issue against reversal.

The next issue is whether the ALJ adequately accommodated the restrictions caused by Plaintiff's gout and joint pain in the physical residual functional capacity determination. Because the ALJ found that Plaintiff could do one of his past jobs, that of Customer Service Representative, a job which the vocational expert identified as sedentary (Tr. 55), the question is whether substantial evidence supported the ALJ's conclusion that Plaintiff was capable of doing sedentary work.

Although Plaintiff testified to flare-ups of his gout, and the medical records support the contention that his gout was, at times, under poor control, the only evidence suggesting that this condition was so severe that it precluded even sedentary work was the opinion of Plaintiff's nurse practitioner.  As noted, that opinion limited Plaintiff to only two to three hours of sitting per day.  The ALJ rejected that opinion as both inconsistent with the medical records and inconsistent with the fact that after it was rendered, Plaintiff returned to work and performed a sedentary job for eight months.  Those are fairly compelling reasons for questioning the validity of the nurse practitioner opinion.

Social Security Ruling 06-03p says the following:

> With the growth of managed health care in recent years and the emphasis on containing medical costs, medical sources who are not "acceptable medical sources," such as nurse practitioners ... have increasingly assumed a greater percentage of the treatment and evaluation functions handled primarily by physicians and psychologists. Opinions from these medical sources who are not technically deemed "acceptable medical sources," under our rules, are important and should be evaluated on key issues such as impairment severity and functional effects, along with the other evidence in the file.

The factors used to evaluate such opinion are the same as are used to weigh the opinions of treating physicians and are set out in 20 C.F.R. §404.1527(c), and include the length of the treating relationship, the supportability of the opinion, and its consistency with other medical records and opinions.  Although the ALJ must consider these factors, he or she need not specifically articulate each factor in the administrative decision.

One of the key factors is the Plaintiff's daily activities, which, in this case, include work activities. That is especially true where a professional opinion is based in part on the Plaintiff's own report of limitations, which is true here.  As to determining how much of a Plaintiff's own testimony to accept, one court has said:

it is entirely appropriate for the ALJ to consider the claimant's daily activities, among other factors, when evaluating symptom-related functional limitation—indeed, the regulations direct the ALJ to do so. 20 C.F.R. § 404.1529(c)(3). The Sixth Circuit has ruled repeatedly that the ALJ has "an adequate basis to discount [the claimant's] credibility" because "some of [his] activities were inconsistent with his claims of disabling pain." *Blacha v. Sec'y of Health and Human Servs.*, 927 F.2d 228, 231 (6th Cir. 1990); *see also Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 532 (6th Cir. 1997) (finding that the ALJ acted properly when he took into account that claimant could "run all of his errands, walk two miles, prepare all of his meals, and drive three times a week"); *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 536 (6th Cir. 2001) (the ALJ properly "considered [the claimant's] testimony concerning fatigue and shortness of breath in light of other evidence that [she] regularly walks around her yard for exercise, rides an exercise bicycle, goes to church, goes on vacation, cooks, vacuums, and makes beds").

*Kirven v. Berryhill*, 2017 WL 8681948, *3 (E.D. Mich. Nov. 17, 2017), *adopted and affirmed* 2018 WL 1535401 (E.D. Mich. Mar. 29, 2018).

Here, the ALJ relied heavily on the fact that Plaintiff not only reported a greater functional capacity when he completed a function report - he said that he could shop, cook, take care of himself, go to church, drive, and pay bills - but that he also worked from August of 2015 to April of 2016. *See* Tr. 28. Those are factors which a reasonable person could rely on in determining that the nurse practitioner opinion overstated the extent of Plaintiff's functional limitations, particularly his ability to sit and stand during a workday. That being so, there is no basis upon which the Court could properly reverse the ALJ's decision on this issue. Overall, therefore, the Court concludes that the ALJ's decision that Plaintiff did not meet the legal requirements for disability under the Social Security Act is supported by substantial evidence, and the decision therefore must be affirmed.

### VII. Recommendation

For all the reasons set forth above, the Court **RECOMMENDS** that the Motion for Judgment (Doc. 13) be **DENIED**, that the decision of the Commissioner be **AFFIRMED**, and that this case be **DISMISSED**.

### VIII. Procedure on Objection

If any party seeks review of this Report and Recommendation by the assigned District

Judge, that party may, within 14 days, file and serve on all parties written objections to the Report and Recommendation which specifically identify the part of the Report to which objection is made as well as the reasons supporting that objection. *See* 28 U.S.C. 636(b)(1); Fed.R.Civ.P. 72(b). Any response must be filed withing 14 days thereafter. Failure to object to a Report and Recommendation waives any right to obtain *de novo* review by the District Judge and waives any issues that might otherwise be raised on appeal. *See, e.g., Robert v. Tesson,* 507 F.3d 981,994 (6th Cir. 2007)

/s/ Terence P. Kemp
United States Magistrate Judge